## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DEBORAH SHARPE | ) | |
| 8000 Courthouse Road | ) | |
| Spotsylvania, VA 22552 | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| MERRICK GARLAND | ) | |
| *in his official capacity only, as* | ) | |
| Attorney General | ) | |
| 950 Pennsylvania Avenue, N.W. | ) | |
| Washington, D.C. 20530 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ANNE MILGRAM | ) | |
| Administrator | ) | |
| Drug Enforcement Administration | ) | |
| 8701 Morrissette Drive | ) | |
| Springfield, VA 22152 | ) | |
| *Defendants.* | ) | |
| | ) | |

## COMPLAINT IN A CIVIL CASE

Plaintiff Deborah Sharpe (Plaintiff), through counsel, respectfully brings this civil action against Defendants Merrick Garland, Anne Milgram, and Charlotte A. Burrows (Defendants), in their official capacity as Attorney General of the United States and Administrator, Drug Enforcement Administration (DEA), respectively, for the cause of action that follows:

## NATURE OF THE CASE

Plaintiff Deborah Sharpe brings this civil action pursuant to the Rehabilitation Act, 29 U.S.C. § 701, et seq, for relief from discrimination based on her disability and reprisal when her employer, the Drug Enforcement Administration (DEA), failed to reasonably accommodate her and subjected her to a hostile work environment. While the DEA permitted Ms. Sharpe to telework

1

4, then 3, then 2 hours per day as a reasonable accommodation, it forced her to exhaust her accrued paid leave; request advanced leave; and then take leave without pay (LWOP) to cover the remainder of her workdays though she was able to perform all of her essential functions via telework. – Over time this forced her to accrue negative leave balances  and delayed her receipt of performance based step increases. In retaliation for her EEO complaints and reasonable accommodation requests, DEA also refused to allow her to participate in training, meetings and other activities with her coworkers; refused to allow her to make up time; removed her normal work duties; and denied her official time to work on her EEO cases. DEA ultimately revoked Ms. Sharpe's reasonable accommodation entirely, thencharged her absent without leave (AWOL), then cited this as a basis to remove her from federal service.

## PARTIES

1.      Plaintiff Deborah Sharpe resides in Spotsylvania, Virginia. DEA employed Ms. Sharpe from May 23, 2010 until it removed her on October 15, 2018. DEA then re-employed Ms. Sharpe following her successful appeal of DEA's decision to remove her, and still employs her today.

2.      Defendant Merrick Garland (Defendant 1) is the Attorney General of the United States and has authority, inter alia, over the hiring, firing, assignment, and terms and conditions of employment of persons employed by the Department of Justice, including but not limited to, persons working for the DEA. Defendant 1 is named solely in his official capacity as head of the agency, as required by the Rehabilitation Act. 29 U.S.C. § 791.

3.      Defendant Anne Milgram (Defendant 2) is the head of the DEA and has authority, inter alia, over the hiring, firing, assignment, and terms and conditions of employment of persons employed by the the DEA. Defendant 2 is named solely in her official capacity as head of the

agency, as required by the Rehabilitation Act. 29 U.S.C. § 791.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, as it asserts claims that arise under the Constitution, law or treaties of the United States, specifically the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701, et seq.

5.      Venue in this District is proper pursuant to 28 U.S.C. § 1391(e)(1) and 5 U.S.C. § 703 because the Department of Justice is headquartered in D.C.

## EXHAUSTION OF REMEDIES

6.      Ms. Sharpe exhausted administrative remedies for the claims she brings in this Complaint, which were timely filed, investigated by DEA and adjudicated by the EEOC as EEOC No. 570-2016-00279X/Appeal No. 2021001771 and EEOC No. 570-2019-00680X/Appeal No. 2022002938.

7.      On May 8, 2015, Ms. Sharpe timely filed a formal complaint of discrimination against the DEA, identified as DEA-2015-01407. On October 15, 2015, DEA accepted Ms. Sharpe's amendments to that formal complaint.  Following DEA's investigation of Ms. Sharpe's formal complaint, Ms. Sharpe timely requested a hearing before the EEOC, which docketed her complaint as EEOC No. 570-2016-00279X. The accepted claims were:

Whether Ms. Sharpe was subjected to a hostile work environment from 2013 to July 2015,

by Unit Chief (UC) Janet Gates when:

a)  From March through December 2014, and in January 2015, her requests for a reasonable accommodation were denied;

b)  From October 22, 2014, to the present, her work hours and duties were reduced, and her requests to telework 8 hours a day were either denied or reduced thereby forcing her to request advanced sick leave;

c) In September 2014, she received an unfair rating of "Successful" on your performance appraisal;

d) On October 27, 2014, she was prevented from attending training and meetings contrary to similarly situated individuals who were permitted to attend;

e) On unspecified dates in 2013 and 2014, UC Gages made hostile comments about her and her disability in the presence of her coworkers; and

f) On unspecified dates in 2013 and 2014, she was not afforded the same opportunity as her coworkers to make up time missed from work.

8.     On August 29, 2016, Ms. Sharpe timely filed a second formal complaint of investigation against the DEA, identified as DEA-2016-01045.  In this complaint, Ms. Sharpe alleged she was discriminated against and subjected to a hostile work environment based on her disabilities and denied a reasonable accommodation when:

a) From February 2015 through current and continuing, her requests for reasonable accommodations were either ignored or denied;

b) From February 2015 through current and continuing, her work hours, duties and authority were reduced;

c) From 2014 through current and continuing, her co-workers are teleworking without the same restrictions placed upon her;

d) In April 2016 and continuing employees from other physical offices and field offices are tasked to assist with the work load during staff absences and heavy influx of work without providing Ms. Sharpe additional hours of work;

e) Ms. Sharpe has been included in some meetings, but removed from the daily processes and decisions leaving her without important knowledge to accomplish her job;

f) When on Workers Compensation, John Cunningham, her supervisor, did not process her CA-7 LWOP submission in a timely manner (a months0 in May, June and July 2016, causing serious delay in her payment from Workers Compensation and he refused to forward her the status or the signed documents when requested;

g) Her T&A would be reviewed by John Cunningham several hours after he had notice she had to log off due to her telework restrictions where he would telephone or email her to log back in to her computer to complete her timesheet

4

at the end of the work day. It was time that she was not compensated for and many times, she was not readily available to her computer and had to travel home to accomplish the task;

h) Mr. Cunningham required her T&A to be completed and verified immediately upon her logging on early in the morning prior to any review of possible work load and additional hours.

i) Mr. Cunningham does not abide or follow her telework agreement;

j) Mr. Cunningham ignores or does not respond to most of her communications;

k) Mr. Cunningham has telephoned her in May/June 2016 early in the morning yelling at her. Days later he asked a junior employee to forward Ms. Sharpe a deadline well after she logged off for the day. The days following, he would refuse to communicate with her and then tell her to disregard and remove the tasking.

l) John Cunningham sent Ms. Sharpe scathing emails alleging she made mistakes, copying her co-workers and outside employees, but did not do the same to her co-workers;

m) Mr. Cunningham refused to address Ms. Sharpe's complaints that staff were removing work from the inboxes in violation of policy;

n) Mr. Cunningham severely delayed or did not submit Ms. Sharpe's step increase paperwork;

o) The Agency responded with hostility to concerns raised by Ms. Sharpe about her time records and refused to correct errors;

p) Mr. Cunningham refused to accommodate Ms. Sharpe;

q) Mr. Cunningham changed Ms. Sharpe's telework hours to 4:00-6:00 PM daily, outside her core duty hours resulting in removing her from communication and participation with her unit;

r) Tracy Rozier, Section Chief, refused to take action in response to Ms. Sharpe's complaints of discrimination and retaliation;

s) Renaldo Prillman denied Ms. Sharpe a private meeting after offering them to the staff;

t) Mr. Cunningham consistently rated Ms. Sharpe lower than the rest of his staff, which he rated as excellent or outstanding;

An Administrative Judge at the EEOC consolidated DEA-2015-01407 and DEA-2016-01045

under EEOC No. 570-2016-00279X.

9.    On March 19, 2018, the EEOC Administrative Judge denied Ms. Sharpe's request to amend EEOC No. 570-2016-00279X to include a claim that DEA revoked her reasonable accommodation and remanded that claim back to DEA to be investigated as a third separate formal complaint, identified as DEA-2018-00558 (and later captioned by the EEOC as EEOC No. 570-2019-00680X). The claims accepted in this case were:

Whether Complainant was subjected to continuing reprisal for her prior EEO activities (EEOC Case No. 570-2016-00279X) and/or discrimination and harassment based on her disability (physical) when:

a)    On February 27, 2018, during the pendency of her 15-day response opportunity to oppose summary judgment, Unit Chief (UC) John Cunningham notified her of the revocation of her previously approved accommodation ( 2 hours of telework per day) which had been in place since 2015, to be effective March 18, 2018.

b)    On March 7, 2018, UC Cunningham threatened her that she would be marked Absent Without Leave (AWOL) if she did not report to work at headquarters or provide new medical documentation.

c)    On March 14, 2018, the Agency issued her an unlawful medical inquiry.

d)    On or about April 4, 2018, UC Cunningham denied her time recorded on her timesheet and marked her AWOL for the time she recorded.

e)    Beginning pay period ending May 12, 2018, and continuing, UC Cunningham placed her on a permanent continuous Absent Without Leave (AWOL) status.

f)    On July 10, 2018, UC Cunningham issued her a Notice of Proposed Removal from federal service due to "Recurring Excessive Unexcused or Unauthorized Absences (AWOL) (3 Specifications)," authored by Deputy Assistant Administrator Renaldo Prillman.

10.    On October 10, 2018, the Agency issued a decision to remove Ms. Sharpe from federal service, and on October 15, 2018, Ms. Sharpe filed a fourth formal complaint, identified as

DEA-2019-00033. After DEA issued a Final Agency Decision (FAD) on DEA-2019-00033, Ms. Sharpe filed an appeal with the U.S. Merit Systems Protection Board (MSPB).

11. On September 30, 2020, the EEOC Administrative Judge issued a Decision Without a Hearing on EEOC No. 570-2016-00279X in favor of DEA. After DEA issued a FAD, Ms. Sharpe appealed to the EEOC's Office of Federal Operations (OFO).

12. On May 20, 2021, the MSPB issued an Initial Decision, MSPB Docket No. DC-0752-19-0735-I-3, reversing DEA's decision to remove Ms. Sharpe and holding that DEA violated the Rehabilitation Act when it rescinded Ms. Sharpe's reasonable accommodation. On June 24, 2021, the Initial Decision became the final Decision of the MSPB.

13. On June 11, 2021, Plaintiff filed a Notice Regarding Claims, informing the AJ that the Merit Systems Protection Board had issued a decision under the Civil Service Reform Act 5 U.S.C.. §7701 regarding claims similar to  those before her, including a finding that the DEA violated the Rehabilitation Act when it revoked Plaintiff's reasonable accommodation and removed her.

14. On February 28, 2022, notwithstanding the MSPB's reversal of the removal and finding that the DEA had violated the Rehabilitation Act, the EEOC Administrative Judge issued a Decision Without a Hearing on EEOC No. 570-2019-00680X in favor of DEA. After DEA issued a FAD, Ms. Sharpe filed a second appeal with OFO.

15. On July 26, 2022, OFO issued a decision on Ms. Sharpe's first appeal, Appeal No. 2021001771, affirming the FAD. On August 24, 2022, Ms. Sharpe filed a Request for Reconsideration.

16. On January 4, 2023, OFO issued a decision on Appeal No. 2021001771 denying Ms. Sharpe's Request for Reconsideration and affirming its decision.

17.     On February 27, 2023, OFO issued its decision on Ms. Sharpe's second appeal, Appeal No. 2022002938, affirming the FAD.

### STATEMENT OF FACTS

18.     In May 2010, DEA hired Ms. Sharpe as an over 30% disabled veteran., as a Freedom of Information Specialist, GS-301-12, Step 1, in the Office of Administration. Ms. Sharpe filled that role until March 12, 2011. The purpose of veterans preference is to restore disabled veterans, who have suffered economic loss due to their service to their country, to a favorable competitive position and acknowledges the obligation owed them. 5 U.S.C. §2108.

19.     In late February 2011, Janet Gates, former Section Chief, Administrative Operations Sections ("SAO"), interviewed Ms. Sharpe as part of a mandatory new employee assessment. Ms. Gates offered Ms. Sharpe a position as a Property Management Specialist ("PMS") in Springfield, VA, running the Warehouse. Ms. Sharpe accepted the offer, and the Agency reassigned Ms. Sharpe in March 2011. Ms. Gates became Ms. Sharpe's second-line supervisor.

20.     On March 1, 2011, Ms. Sharpe fell while at work and due to complications from her accident, developed Reflex Sympathetic Dystrophy (RSD) of right foot/ankle; continual moderate sprain of right foot/ankle; and herniated L-3, L-4 and L-5 discs, causing sciatica in both legs, and limiting her ability to stand, sit, walk, bend, and lift. Ms. Sharpe has no feeling in her right foot and is unable to mobilize her ankle, which forces her to use her left foot while driving; minimized the duration of time she can drive; and requires her to use a scooter. Ms. Sharpe suffers from excruciating pain after even short periods of sitting or standing, forcing her to change positions frequently to reduce pain. Ms. Sharpe walks with the assistance of a cane. She utilizes a lumbar support pillow and ice pack, also to reduce pain. Additionally, because of the RSD, Ms.

Sharpe has an implanted pump, which distributes pain medication to her spine.

21.     On or about March 3, 2011, Ms. Sharpe reported the severity of her injury to Ms. Gates and her doctor's recommendation that she recover at home. Ms. Gates told her to file a Workers Compensation claim.

22.     On August 17, 2011, DEA reassigned Ms. Sharpe to the Property Management Unit in Arlington, VA. John Cunningham, Chief of the Property Management Unit, became Ms. Sharpe's first line supervisor. The reassignment increased her commute by an hour and required her to use her car, a train, and the Washington, DC Metrorail system.

23.     Ms. Sharpe served as a Property Management Specialist., GS-2001-12, Her position description explains that a Property Management Specialist "provides support and assistance with the responsibility for developing, recommending, and reviewing the effectiveness of DEA policies, procedures, and standards covering the authorization, acquisition, storage, distribution, use, maintenance, disposal, and accountability of DEA furniture and equipment." Ms. Sharpe's duties were divided among 7 major component areas involving the administration and oversight of DEA's property management program; involved a fair amount of autonomy and discretion in an "unstructured setting"; and was primarily sedentary in nature. Ms. Sharpe's performance standards included 5 critical elements, all of which centered on her individual ability to provide correct advice in response to questions; communicate clearly with others; "[i]ndependently identif[y] and resolve[] routine problems in [her] own work"; make timely recommendations; "effectively partner[] with customers"; and "[m]anage[] and prioritize[] [her] own work." Property Management Specialists at DEA handle property management issues both at headquarters and in the numerous field offices staffed by agency employees worldwide.

24.     Between 2011 and 2014, Ms. Sharpe made numerous requests to telework or have

a gliding schedule that would allow her to work 8 hours a day. However, her requests were not granted and DEA did not provide alternative accommodations. Though Ms. Gates did not formally deny Ms. Sharpe's accommodation requests, she threatened she would lose duties and that there would not be sufficient work available if she teleworked. Indeed, as Ms. Sharpe's medical absences extended, Ms. Gates and Mr. Cunningham gradually removed Ms. Sharpe's duties including document review; communication with customers seeking guidance and policy information; UFMS document reviews; attending meetings' attending training; and special projects. These actions also prevented her from participation in roundtable discussions necessary to address issues in their department.

25.    In 2011, Ms. Sharpe's annual salary based on her pay grade was $77, 368.00. However, because she was allowed limited telework, her gross pay was $44,447.21.

26.    In 2012, Ms. Sharpe's annual salary based on her pay grade was $79,864.00. However, because she was allowed limited telework, her gross pay was $63, 275.42.

27.    In 2013, Ms. Sharpe's annual salary based on her pay grade was $82,359.00. However, because she was allowed limited telework, her gross pay was $64, 583.42.

28.    Mr. Cunningham stated that the day-to-day duties of a Property Management Specialist heavily rely on the use of workflow inboxes and email inboxes through which requests come into the property management unit and are addressed by the Property Management Specialists on a rolling, first-in first-out basis.

29.    On August 28, 2014, Ms. Sharpe submitted DOJ Form 100B, Reasonable Accommodation Information Reporting Form, seeking full time telework as an accommodation while she recovered from back surgery.

30.    In or around September 2014, Ms. Gates, during a meeting with Mr. Cunningham,

leafed through Ms. Shape's time records and told her absences were going to affect her performance rating. Her September 2014 rating was "Successful." However, Ms. Sharpe had received nothing but praise for her timeliness and work product from Ms. Gates and Mr. Cunningham during the rating period. Mr. Gates informed her he would have given her an "Outstanding" rating but Ms. Gates would not sign it. Her rating was based solely on her absence from the workplace.

31.    DEA's performance rating scale has 4 categories: outstanding, excellent, successful, and unacceptable.

32.    Mr. Cunningham granted Ms. Sharpe the partial accommodation of 4 hours of telework per day beginning October 27, 2014. As a result, Ms. Sharpe teleworked for 4 hours per day, and had to use all available leave; request advanced leave; or leave without pay (LWOP) for the remaining 4 hours per day. Additionally, the exhaustion of her leave and extended LWOP time prevented Ms. Sharpe from receiving holiday pay. Mr. Cunningham alleged that he could not grant Ms. Sharpe 8 hours of telework each day because (a) he anticipated without any evidence the workflow would slow and (b) while teleworking, Ms. Sharpe would not be able to obtain his "wet signature" on certain documents.

33.    Mr. Cunningham acknowledged that he "do[es] ***not know*** of any policy regarding wet signatures specifically," but stated that it was "important" to show his "approval, authorization, agreement, [...]," and claimed that "the Office of Administration does not have the technology or capability for electronic signature, but [he] will keep [Ms. Sharpe] posted with any new developments."  Further, by denying Ms. Sharpe four hours of work time per day when she could have been teleworking full-time, Cunningham's decision actually did negatively affect her workflow.

11

34.     On December 4, 2014, after the Agency extended Ms. Sharpe's telework agreement, though DEA rated Ms. Sharpe's performance "Successful," Mr. Cunningham reduced her telework hours to three hours per day, forcing her to take five hours per day of LWOP.

35.     On January 8, 2015, Ms. Sharpe filed an informal EEO Complaint alleging that the DEA had subjected her to disability discrimination and failed to reasonably accommodate her. An EEO Counselor contacted Mr. Cunningham regarding claims relevant to that complaint in January 2015.

36.     On February 3, 2015, Ms. Sharpe emailed Mr. Cunningham a note from her surgeon recommending 8-hours of telework given that her ongoing symptoms prohibited her from being able to commute. Instead, on February 10, 2015, despite her successful performance of her duties, Mr. Cunningham reduced Ms. Sharpe's telework reasonable accommodation again, to a limit of 2 hours daily, forcing her to use 6 hours of leave per day or take LWOP

37.     Ms. Sharpe saw her surgeon for a checkup approximately every 2-3 months. Each time, she provided medical notes to Mr. Cunningham, showing her condition and limitations had not changed.

38.     In 2015, Ms. Sharpe's annual salary based on her pay grade was $84,01700. However, because she was allowed limited telework, her gross pay was $44,443.45.

39.     In 2016, Ms. Sharpe's annual salary based on her pay grade should have been $85,238 However, because she was allowed only limited telework, her gross pay was actually only $36,586.77. At the end of 2016, because she had been forced to use all her  accrued leave and to take advanced sick leave, Ms. Sharpe had a negative balance of 152 hours sick leave, and zero hours of annual leave.

40.     In 2017, Ms. Sharpe's annual salary based on her pay grade should have been

$87,693 However, because she was allowed only limited telework, her gross pay was only $34,369.  At the end of 201, because she was forced to use all her accrued leave and to take advanced sick leave, Ms. Sharpe had a negative balance of 198 hours sick leave, and only 6.5 hours of annual leave

41.     In December 2017, Ms. Sharpe again provided medical documentation to Mr. Cunningham following her routine medical check-ups. At the end of 2017, DEA still deemed Ms. Sharpe's performance Successful.

42.     In January 2018, almost three years after Ms. Sharpe's initial request for accommodation, the parties were nearing completion of the discovery process for Ms. Sharpe's EEO complaint, now docketed as EEOC No. 570-2016-00279X. DEA's Representative at the time was Kimberly Mitchell, Office of Chief Counsel.

43.     At around the same time, on January 19, 2018, though Ms. Sharpe's performance was still rated Successful, Ashley America, Human Resources Specialist, sent an email to Mr. Cunningham, copied to Ms. Mitchell, with a draft notice attached which would inform Ms. Sharpe that she can no longer telework at all. Ms. Mitchell replied by recommending that  DEA request updated medical documentation from Ms. Sharpe (her email inaccurately asserted that Ms. Sharpe had not submitted medical documentation since November 2016), and that DEA advise Ms. Sharpe that should she not meet the Agency's deadline, she may be proposed for removal based on her medical absences. Elizabeth Goode, Equal Employment Opportunity Officer, replied, "If the accommodation is being withdrawn, the letter needs to say that and explain that it an [sic] an undue hardship . . ."

44.     By February 1, 2018, despite the fact that DEA continued to deem Ms. Sharpe's performance Successful, Ms. America began circulating a draft memorandum that would notify Ms. Sharpe that the Agency was withdrawing her reasonable accommodation.

45.     On February 20, 2018, the Agency filed a Motion for Summary Judgment in EEOC No. 570-2016-00279X.

46.     On February 27, 2018, Mr. Cunningham sent Ms. Sharpe a memorandum revoking her reasonable accommodation. In the memorandum, Mr. Cunningham stated he was withdrawing Ms. Sharpe's reasonable accommodation "as it has become an undue hardship allowing you to perform limited duties' remotely." Mr. Cunningham alleged the accommodation was an undue hardship  for three reasons: 1) Headquarters (HQ) Prospectus/Office relocation; 2) HQ Technical Refresh of mobile phones; and 3) Conduct hands-on training for Property Custodial Assistants (PCA).   Again, the only reason Ms. Sharpe was performing "limited duties" was Mr. Cunningham's refusal to authorize her to work full-time, as opposed to part-time, telework.

47.     On March 7, 2018, Mr. Cunningham reminded Ms. Sharpe that she was expected to report to work at Headquarters on March 19, 2018, and said:

> Additionally, updated medical documentation will be required if you want to continue using Leave Without Pay. Failure to report or provide the requested medical documents may result in being charged Absence Without Leave (AWOL).

Ms. Sharpe replied:

> **As you already know, I provide you up-dated medical documentation with restrictions every two months when I am scheduled for review by my treating physicians.** I have provided up-dated medical documentation regularly and consistently which also states the next review date as required by DEA HR. You should know from my last doctors note sent to you and received by you on 12/29/18 at 10:54 AM and the medical documentation is dated 12/28/18 stating the same restrictions that March 8, 2018, is my review date again.
>
> During tomorrow's physician review, I shall receive the restrictions and any other information the doctor deems necessary on my medical documentation. . .

14

That being said, you have received up-dated medical documentation regularly and
consistently. To date, the medical documentation has not changed the restrictions
and to demand that I return to Arlington, VA HQ office on Monday the 19th, with
in place medically documented restrictions for travel and otherwise is further
retaliation . . .

(Emphasis in original).

48.     On March 13, 2018, Ms. Sharpe submitted updated medical documentation to Mr.

Cunningham, dated March 12, 2018.  The medical documentation confirmed that she needed to

avoid the commute due to her RSD, and did not place any limits on her ability to work a full day.

The medical note also noted Ms. Sharpe's difficulty maneuvering on stairs and that the elevators

and escalators at her duty station frequently do not function properly.

49.     The following day, March 14, 2018, Ms. America advised Mr. Cunningham that

another notice requesting that Ms. Sharpe provide still more medical documentation "is ready,"

and that Ms. Sharpe "needs to turn in updated medical documentation, not just the same notes she

has been turning in . . . Therefore, a charge of AWOL is appropriate until she submits acceptable

medical documentation . . . "  The same day, Ms. American sent Ms. Sharpe a letter signed by

Lareatha A. Polk, Section Chief, Human Resources Division reminding her that Mr. Cunningham

had informed her she had to submit updated medical information to continue to use LWOP.

50.     The following day, March 15, 2018, Ms. Sharpe submitted another letter from her

treating provider explaining her current diagnosis and treatment plan. Despite this, later that day,

Mr. Cunningham sent Ms. Sharpe another request for medical documentation.

51.     On March 23, 2018, Mr. Cunningham informed Ms. Sharpe that her medical

documentation was adequate, and thus she "will not be charged AWOL…" The Agency did not

inform her there were deficiencies in her medical documentation.

52.     From April 16-18, 2018, Mr. Cunningham charged Ms. Sharpe 6.3 hours AWOL.

He charged her AWOL an additional 2 hours the following week.

53.     On May 3, 2018, despite having already charged her AWOL, Mr. Cunningham sent Ms. Sharpe an email belatedly informing her that per DEA Personnel Manual Section 2630.18(6) and (C), he was no longer authorized to approve Ms. Sharpe's LWOP, and that her "[f]ailure to report to your duty station will result in charges of Absence Without Leave (AWOL)." Even before Mr. Cunningham's May 3, 2018, AWOL ultimatum, Ms. Sharpe's work status had been recorded as a combination of AWOL, LWOP, and regular time.

54.     At this time, Ms. Sharpe was not able to physically report to the office for the reasons set forth in her updated medical documentation.

55.     On June 29, 2018,  EEO Officer Goode sent a memorandum to Renaldo Prillman, then Deputy Assistant Administrator, copied to Mr. Cunningham, concerning the acceptance of Ms. Sharpe's second formal EEO complaint for investigation.

56.     On July 10, 2018, Mr. Prillman issued Ms. Sharpe a Notice of Proposed Removal charging her with three specifications of Recurring Excessive Unexcused or Unauthorized Absences (AWOL):

Specification 1
From Friday, May 4, 2018 through Friday, May 11, 2018, you failed to report to work and you were not on approved leave. Therefore, you were charged 48 hours of AWOL for your unauthorized absences those days.

Specification 2
From Monday, May 14, 2018 through Friday, May 25, 2018, you failed to report to work and you were not on approved leave. Therefore, you were charged 80 hours of AWOL for your unauthorized absences those days.

Specification 3
From Monday June 4, 2018 through Friday, June 8, 2018, you failed to report to work and you were not on approved leave. Therefore, you were charged 40 hours of AWOL for your unauthorized absences those days.

57.     DEA removed Ms. Sharpe effective October 15, 2018. At all times prior to DEA's decision to remove Ms. Sharpe, DEA rated her performance Successful.

58.     Ms. Sharpe appealed her removal to the U.S. Merit Systems Protection Board (MSPB) and raised the affirmative defense of disability discrimination. On March 16, 2020, as a result of the COVID-19 pandemic, DEA allowed its employees to telework full time. DEA stipulated in the MSPB appeal record that it would have permitted Ms. Sharpe to telework full time had it employed her after March 16,2020.  .

59.     On May 20, 2021, the MSPB found DEA failed to meet its burden to establish that allowing Ms. Sharpe to continue teleworking would have been an undue burden. The Initial Decision stated:

> I find the agency improperly rescinded the appellant's telework accommodation and, therefore, erred in removing her on a charge of absence without leave. Accordingly, the appellant's removal is REVERSED because it was based on a prohibited personnel practice in violation of 5 U.S.C. § 2302(b)(1), *viz*., a violation of the Rehabilitation Act's reasonable accommodation mandate. . .

The MSPB also held:

> Because the agency's rescission of the appellant's telework reasonable accommodation was the catalyst for the removal action, and where the appellant successfully served as a property management specialist for almost 4 years while in a telework status, I find the dispositive issue on appeal is whether the agency can demonstrate continuing the appellant's telework reasonable accommodation imposed an undue hardship . . . not whether the appellant could perform the essential functions of her position . . . As to this latter issue, there is no dispute the appellant could perform the essential functions of her position remotely . . . As set forth below, however, I find the agency cannot prove by a preponderance of the evidence that the continuation of the appellant's telework reasonable accommodation imposed an undue hardship on its operational mission.

## CAUSES OF ACTION

### COUNT 1

**Failure to Provide Reasonable Accommodate in Violation of the Rehabilitation Act**

**(against Defendants 1 & 2)**

Plaintiff incorporates by reference herein paragraphs 1-47 of this Complaint.

61.     The Rehabilitation Act of 1973, 29 U.S.C. § 701, et seq., requires executive agencies to provide reasonable accommodations to qualified individuals with disabilities, except when doing so would pose an undue burden.

62.     Ms. Sharpe has impairments that substantially limit the major life activities of walking, standing, sitting, and driving. DEA has never disputed that Ms. Sharpe is disabled.

63.     Ms. Sharpe was qualified to perform the essential functions of her position. At all times relevant to this Complaint, DEA deemed Ms. Sharpe's performance as satisfactory.

64.     The essential functions of Ms. Sharpe's position can be performed via telework. Ms. Sharpe's position is sedentary with the majority of her duties accomplished over computer.

65.     Ms. Sharpe requested full-time telework as reasonable accommodations.

66.     DEA did not provide Ms. Sharpe with alternate, effective accommodations. Instead

67.     DEA mandated Ms. Sharpe take leave or leave without pay (LWOP) when she was willing and able to perform the essential functions of her job.

68.     DEA cannot establish granting Ms. Sharpe's accommodation requests would be an undue burden.

69.     As a result of Defendant's actions, Ms. Sharpe suffered and continues to suffer harm.

## COUNT 2

### Discrimination on the Basis of Disability in Violation of the Rehabilitation Act

### (against Defendants 1 & 2)

70.     Plaintiff incorporates by reference herein paragraphs 1-55 of this Complaint.

71.     The Rehabilitation Act of 1973, 29 U.S.C. § 701, et seq., prohibits executive agencies from discriminating against qualified individuals because of a disability.

72.     On multiple occasions in March 2018, DEA required Ms. Sharpe to provide it with updated medical information although Ms. Sharpe's need for reasonable accommodation was known and obvious and Ms. Sharpe continually provided DEA with current medical information.

73.     As a result of Defendant's actions, Ms. Sharpe suffered and continues to suffer harm.

## COUNT 3

### Retaliation for Protected Activity in Violation of the Rehabilitation Act

### (against Defendants 1 & 2)

74.     Ms. Sharpe incorporates by reference herein paragraphs 1-59 of this Complaint.

75.     Ms. Sharpe engaged in protected activity when she requested reasonable accommodation; objected to multiple requests for additional medical documentation; and filed and participated in the processing of her EEO complaints.

76.     In retaliation for Ms. Sharpe's protected activity, DEA cut the hours it permitted Ms. Sharpe to work each day from 4 hours, to 3 hours, to 2 hours, and eventually to no hours when it revoked her reasonable accommodation entirely.

77.     The temporal proximity of DEA's actions in relation to Ms. Sharpe's protected activities establish a sufficient causal connection to establish a prima facie case of reprisal.

78.     DEA's actions would dissuade a reasonable employee from engaging in protected activity.

79.     DEA engaged in reprisal against Ms. Sharpe because she engaged in protected EEO activity.

80.     As a result of Defendant's actions, Ms. Sharpe suffered and continues to suffer harm.

## REQUEST FOR RELIEF

Wherefore, Plaintiff, by and through counsel, respectfully requests that this Court:

(1) hold that the Defendants 1 and 2 subjected Plaintiff to discrimination based on disability and reprisal;

(2) order remedial Equal Employment Opportunity and Reasonable Accommodation training for the supervising officials named in this Complaint;

(3) award damages in an amount to be determined at trial, in addition to prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including but not limited to, compensation for severe emotional distress, humiliation, embarrassment, and exacerbation of her medical conditions;

(4) award damages in an amount to be determined at trial, in addition to prejudgment interest, to compensate Plaintiff for all economic damages, including, but not limited to, lost past and future income, service credit, and other employment benefits;

(5) grant Plaintiff retroactive step increases with backpay and benefits;

(6) grant Plaintiff an award of reasonable costs and attorney fees incurred in this civil action pursuant to 28 U.S.C. § 2412; and

(7) grant Plaintiff such other relief as the Court deems just and proper.

## <u>JURY DEMAND</u>

81. Plaintiff demands a trial by jury on all triable issues set forth herein.


Dated: April 4, 2023

Respectfully submitted,


 /s/ Heather G. White

Heather G. White
D.C. Bar No. 497159
*Partner*
FEDERAL PRACTICE GROUP
1750 K Street Northwest, Suite 900
Washington, DC 20006-2317
Telephone: (202) 862-4360
Facsimile: (888) 899-6053
hwhite@fedpractice.com

*Counsel for Plaintiff*